IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

DAVID MAY,

      Plaintiff,

v.

T. ROWE PRICE,

      Defendant.

## COMPLAINT

COMES NOW Plaintiff, David May, by and through counsel, Cornish & Dell'Olio, P.C., and for his Complaint against the Defendant, T. Rowe Price states as follows:

### Introduction

1. This is an action brought against T. Rowe Price for disability discrimination and failure to accommodate in violation of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and for disability and age discrimination in violation of the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-402.

### Jurisdiction

2. Jurisdiction is proper in the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117(a). By virtue of the Court's original jurisdiction over Mr. May's ADA and ADEA claims, this Court has supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367.

**Venue**

3. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) as the actions giving rise to this action occurred in the State of Colorado.

**Parties**

4. David May resides in Colorado Springs, Colorado.

5. Mr. May worked for Defendant T. Rowe Price in Colorado Springs, Colorado.

6. T. Rowe Price is an investment advisory and financial planning firm with offices throughout the United States.

**Factual Allegations**

7. David May was born in 1968. At all times relevant to this Complaint, he was over the age of forty.

8. A number of years ago, Mr. May suffered a traumatic brain injury ("TBI").

9. The TBI causes Mr. may to suffer from the following symptoms: weakness in his legs and feet, aphasia, vision problems, and social awareness concerns similar to autism.

10. The weakness that Mr. May suffers in his legs and feet impacts his mobility and his balance.

11. As a result of the mobility and balance issues caused by the weakness in his legs and feet, Mr. May uses a wheelchair.

12. The weakness in Mr. May's legs and feet, and the mobility and balance issues caused by that weakness, substantially limit his ability to walk and stand as compared to the average member of the general population.

13. The vision problems that Mr. May suffers from require him to use larger

computer monitors when working on computers.

14. Mr. May's vision problems substantially limit his ability to see as compared to the average member of the general population.

15. Aphasia is a disorder that results from damages to portions of the brain that are responsible language.

16. Aphasia impairs the expression and understanding of language as well as reading and writing.

17. Mr. May's aphasia creates communication difficulties for him.

18. The aphasia and the individual symptoms of the aphasia that Mr. May suffers from substantially limit his ability to communicate and substantially limit the operation of his neurological and brain functions, as compared to the average member of the general population.

19. Mr. May also suffers from post-traumatic stress disorder ("PTSD"), which is an anxiety disorder which has can develop after experiencing traumatic or threatening events.

20. The symptoms Mr. May suffers due to his PTSD include depression, social withdrawal, anxiety, panic attacks, loss of concentration, and an exaggerated flight or fight response.

21. Loud noises and surprises are among the triggers of Mr. May's PTSD.

22. The PTSD and the individual symptoms of the PTSD that Mr. May suffers from substantially limit his ability to concentrate, think, and communicate, and substantially limit the operation of his neurological and brain functions, as compared to the average member of the general population.

23. Mr. May was hired by T. Rowe Price ("T. Rowe") in August 2017 to work as a Workplace Investment Services and Education (W.I.S.E.) Associate. In November 2017, Mr.

May was promoted to a Key Accounts position in the W.I.S.E. department.

24. At all times during his employment, Mr. May was able to perform the essential functions of his position with or without reasonable accommodation.

25. At all times during his employment, Mr. May was qualified for the position he held.

26. At all times during his employment, Mr. May performed the duties of his position satisfactorily.

27. After he was hired, and throughout his employment with T. Rowe, Mr. May was open with his supervisors about his TBI and the symptoms he suffered from the TBI.

28. At the time he was hired by T. Rowe, Mr. May requested that he be provided with larger computer monitors to facilitate his ability to work. Specifically, Mr. May requested that he be provided with three larger-sized computer monitors to assist with his vision issues and a short-term memory issue.

29. Mr. May explained to T. Rowe why he needed the three larger size monitors at the time he requested them and at various time thereafter.

30. T. Rowe agreed to provide Mr. May with the larger monitors he requested.

31. Mr. May was provided with two larger monitors in January 2018, nearly three months after his initial request.

32. After Mr. May received the two larger monitors in January 2018, he was better able to see his work.

33. Despite having difficulties seeing his work for approximately three months while he was waiting for the larger monitors, Mr. May was charged with errors and disciplined for errors that occurred while he was working without the requested accommodations.

34. After being written up for the errors that occurred while he was working without the requested accommodations, Mr. May reported to Human Resources that he believed he was being subjected to discrimination.

35. At various times throughout his employment, Mr. May communicated to his managers that the delay in providing the accommodations impacted his ability to perform his job.

36. Mr. May did not receive the third monitor he requested until May 1, 2018.

37. When Mr. May completed his initial training, he was assigned to a team managed by Kelsey Byland.

38. After Mr. May was assigned to her team. Ms. Byland told him that she was going to trade him to another team because she had too many older men on her team.

39. After Ms. Byland made the remark about the ages of the men on her team, she traded the majority of the men over forty years old to other teams.

40. Approximately six months after Mr. May was transferred away from Ms. Byland's team, he was transferred back under her supervision.

41. When Mr. May was returned to Ms. Byland's team, she told him that she was not pleased to have an older man on her team.

42. Mr. May was subjected to jokes and ridicule about his age and disabilities by Ms. Byland in team meetings.

43. Ms. Byland made jokes about Mr. May's age and laughed at jokes and comments made by other team members about Mr. May's age.

44. When Mr. May's employment with T. Rowe started, the desks on the floor where he worked were arranged in a way that did not permit him to move around freely in his wheelchair without rubbing against, or bumping, into the desks. This made it difficult for Mr.

5

May to move throughout the office or enter his cubicle.

45. Later in Mr. May's employment, T. Rowe reconfigured the layout of the workspace in a way that provided sufficient space for Mr. May to move about freely in his wheelchair without hitting any desks.

46. After the desks were moved to provide adequate space for Mr. May to move about, T. Rowe moved trashcans into the aisles between the desks, which impeded Mr. May's ability to move in his wheelchair.

47. With the new configuration of the desks and trashcans, Mr. May was repeatedly hitting trashcans and knocking them over, which put him in the position of needing to get out of his wheelchair to pick up the spilled trash.

48. Mr. May reported his problems maneuvering through the workspace to Ms. Byland, who responded that it was more important for the facilities department to have convenient access to the trashcans than it was for Mr. May to be able to use his wheelchair without impediment.

49. Mr. May felt humiliated by Ms. Byland's dismissive reaction to his concerns about wheelchair accessibility.

50. Mr. May and other employees created "cheat sheets" and other job aids to assist them with their daily routines at work.

51. Although multiple employees used various aids in the performance of their work, Mr. May was the only employee who was directed to stop using those materials by Ms. Byland.

52. Mr. May requested that he be permitted to continue using the aids as an accommodation for the symptoms of his TBI, but that request was denied.

53. At various times throughout his employment, Mr. May contacted T. Rowe's

Human Resources department to report his concerns about discrimination related to his disability.

54. In June 2018, Ms. Byland told Mr. May that T. Rowe considered his reports to Human Resources to be disloyal to the company.

55. Shawn Reagan, a T. Rowe Vice President, told Mr. May that T. Rowe corporate policy prohibiting retaliation did not apply to Mr. Reagan's department.

56. Ms. Byland told Mr. May that he would be subject to greater scrutiny because of his reports to Human Resources and that further reports about his disability or disability discrimination would result in negative consequences to Mr. May.

57. In or around August 2018, Brandon Ridenour became Mr. May's supervisor.

58. Mr. Ridenour made jokes about Mr. May's age and disabilities and laughed at jokes and comments made by other team members about Mr. May's age and disabilities.

59. On multiple occasions, Mr. Ridenour would make comments to Mr. May like: "let's take a walk" or similar words to that effect.

60. Mr. Ridenour made the comments about "taking a walk" in a manner and tone of voice that Mr. may understood to mock or ridicule his use of a wheelchair.

61. On at least one occasion, Mr. May pointed out to Mr. Ridenour that his comments about the two "taking a walk" were not the best choice of words due to Mr. May's use of a wheelchair.  Mr. Ridenour disregarded Mr. May's remarks.

62. After Mr. May had notified Mr. Ridenour of his concern about Mr. Ridenour's references to the two "taking a walk," there was another instance when Mr. Ridenour told Mr. May that they should "take a walk," and Mr. May responded that he found Mr. Ridenour's comment to be offensive.

63. In response to Mr. May's statement that he was offended by Mr. Ridenour's comment, Mr. Ridenour became angry and told Mr. May that he needed to be less sensitive.

64. During the summer of 2018, there was construction in the building near Mr. May's workspace.

65. The loud noises from the construction were triggers for Mr. May's PTSD symptoms and impacted his work performance.

66. While working around the construction and noise during the summer of 2018, Mr. May requested that he be reassigned to a different position away from the construction as an accommodation for his disability. Mr. May did not receive a response to that request for months.

67. During his employment, Mr. May submitted a letter to T. Rowe from his doctor verifying his disability.

68. After receiving the letter from Mr. May's doctor, Mr. Reagan told Mr. May that he did not believe that Mr. May's TBI impacted his ability to communicate.

69. After receiving the letter from Mr. May's doctor, Mr. Reagan told Mr. May that he doubted that Mr. May had aphasia.

70. After receiving the letter from Mr. May's doctor, Mr. Reagan told Mr. May that it was opinion that Mr. May's doctor's diagnoses and medical opinions were wrong.

71. After Mr. May contacted Human Resource with concerns about disability discrimination, Mr. Ridenour told Mr. May that he should not contact Human Resources and that Mr. May was barred from emailing Human Resources with concerns about his disability or potential accommodations.

72. During a fire drill, Mr. May was left under the fire alarm.

73. The loud noise and surprise of the fire alarm caused Mr. May to suffer a panic

attack related to his PTSD.

74. Mr. May was found by members of another department in a corner distraught after the fire drill.

75. Mr. May was subjected to negative comments and ridicule by his supervisors and coworkers for not getting back to his desk during the panic attack.

76. On one occasion when Mr. May was having difficulty communicating due to his aphasia he was counseled and written up because of how he was communicating.

77. When he was told of the write-up related to his communication, Mr. May raised the issue of his aphasia, and in response was told: "you need to think more before you speak," or words to that effect.

78. On November 20, 2018, Mr. May notified T. Rowe management that he believed the write-up based on his communication was discriminatory and violated the ADA.

79. On December 10, 2018, Mr. May reported his concerns with the lack of effective wheelchair accessibility in the workspace due to the trashcan placement to Darren Reed in Human Resources.  Mr. Reed did not respond to this issue.

80. On December 18, 2018, Mr. May reported to management that one of his coworkers had intentionally blocked the accessible route that he needed to use to access his desk while in his wheelchair.  In that report, Mr. May noted that he felt he was being targeted by T. Rowe.

81. On December 28, 2018, T. Rowe informed Mr. May that his request for reassignment as an accommodation was denied.  T. Rowe told Mr. May that his requested accommodation was denied because of his work performance in the position he occupied at the time.

9

82. When Mr. May was informed that his request for reassignment was denied, he responded to T. Rowe and explained that the sudden and loud noises from the construction triggered his PTSD and caused him to lose focus on his work and asked to be moved to a different section of the building as an accommodation.

83. Mr. May also noted that some of his prior requests for accommodation had not been addressed and the ones that others had taken months to be addressed.

84. Less than two weeks after Mr. May responded to the notice of denial of his requested reasonable accommodation, T. Rowe terminated his employment.

85. At the time T. Rowe terminated his employment, Mr. May was able to perform the essential functions of his job with or without a reasonable accommodation.

86. T. Rowe failed to engage in any interactive process with Mr. May about the possible accommodation of reassignment to a vacant position or moving his work location.

87. Mr. May could have been accommodated in his position by moving his workspace away from the construction area or by reassignment to another position in an area that was not under construction.  Other accommodations were also available that would have enabled him to return to his position.

88. T. Rowe denied Mr. May any reasonable accommodations and terminated his employment.

89. T. Rowe subjected Mr. May to a hostile work environment because of his disability and his age.

90. T. Rowe terminated Mr. May's employment because of his disability and his age.

91. T. Rowe terminated Mr. May's employment in retaliation for his requests for accommodation and in retaliation for his opposition to disability discrimination.

**First Cause of Action**
**(Americans with Disabilities Act—Failure to Accommodate)**

92. Plaintiff realleges all prior paragraphs and incorporates them herein.

93. Plaintiff is a qualified individual with a disability, specifically a traumatic brain injury ("TBI"), aphasia, post-traumatic stress disorder ("PTSD"), vision issues, and mobility issues.

94. Plaintiff's TBI, aphasia, PTSD, vision issues, and mobility issues substantially limit his ability to walk, stand, see, concentrate, think, and communicate, and substantially limit his brain and neurologic major bodily functions.

95. Plaintiff was qualified for his position.

96. Plaintiff was able to perform the essential functions of his job with or without reasonable accommodations.

97. Plaintiff requested a reasonable accommodation, or alternatively, Defendant was aware of Plaintiff's need for a reasonable accommodation.

98. Defendant failed to engage in the interactive process with Plaintiff regarding any potential reasonable accommodations.

99. Defendant failed to provide Plaintiff with a reasonable accommodation at any time after his request for a reasonable accommodation or after Defendant was aware of Plaintiff's need for a reasonable accommodation.

100. There were reasonable accommodations available to Plaintiff that Defendant could have provided, including allowing reassigning Plaintiff to a vacant position; relocating Plaintiff's workspace to a location away from the noise associated with construction; and many others.

101. Plaintiff's employment was terminated because Defendant failed to provide him

with a reasonable accommodation.

102. Defendant's acts and omissions violated Plaintiff's rights under the Americans with Disabilities Act.

103. Defendant acted with malice and with reckless disregard for Plaintiff's federally protected right to reasonable accommodations in the workplace.

104. As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

## Second Cause of Action
### (Americans with Disabilities Act—Disability Discrimination)

105. Plaintiff realleges all prior paragraphs and incorporates them herein.

106. Defendant knew that Plaintiff suffered from disabilities.

107. Defendant knew that Plaintiff's disabilities substantially limited him in one or more major activities or major bodily functions.

108. Defendant regarded Plaintiff as having a disability.

109. Defendant knew that Plaintiff had a record of a disability.

110. Defendant discriminated against Plaintiff because of his disabilities by engaging in, tolerating, or failing to prevent the disability-based harassment alleged herein.

111. During Plaintiff's employment his supervisors and coworkers subjected him to offensive and unwelcome comments and treatment and other incidents of harassment because of his disability.

112. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and he perceived the conduct to be offensive and/or undesirable.

113. The conduct suffered by Plaintiff was sufficiently pervasive and/or severe to alter and did alter a condition of Plaintiff's employment and created an abusive working environment.

114. Plaintiff was detrimentally affected by the conduct and such conduct would have detrimentally affected a reasonable person in Plaintiff's position.

115. Defendant knew or should have known of the harassment described herein.

116. The harassment directed at Plaintiff was either intended to cause him severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress he has suffered relating to the conduct of Defendant.

117. Defendant terminated Plaintiff's employment because of Plaintiff's disability, because it regarded Plaintiff as having a disability, or because Plaintiff had a record of having a disability.

118. Defendant's acts and omissions violated Plaintiff's rights under the Americans with Disabilities Act.

119. Defendant acted with malice and with reckless disregard for Plaintiff's federally protected right not to be terminated because of his status as a qualified individual with a disability.

120. As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

### Third Cause of Action
### (Americans with Disabilities Act—Retaliation)

121. Plaintiff realleges all prior paragraphs and incorporates them herein.

122. Plaintiff engaged in protected activity when he opposed disability discrimination and challenged Defendant's failure to accommodate his disabilities.

123. Plaintiff was subjected to a materially adverse action when Defendant terminated his employment.

124. Defendant terminated Plaintiff's employment because of Plaintiff's protected activity.

125. Defendant's acts and omissions violated Plaintiff's rights under the Americans with Disabilities Act.

126. Defendant acted with malice and with reckless disregard for Plaintiff's federally protected right not to be terminated because of his protected activity.

127. As a result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

### Fourth Cause of Action
### (Colorado Anti-Discrimination Act—Failure to Accommodate)

128. Plaintiff realleges all prior paragraphs and incorporates them herein.

129. Plaintiff is a qualified individual with a disability, specifically a traumatic brain injury ("TBI"), aphasia, post-traumatic stress disorder ("PTSD"), vision issues, and mobility issues.

130. Plaintiff's TBI, aphasia, PTSD, vision issues, and mobility issues substantially limit his ability to walk, stand, see, concentrate, think, and communicate, and substantially limit his brain and neurologic major bodily functions.

131. Plaintiff was qualified for his position.

132. Plaintiff was able to perform the essential functions of his job with or without reasonable accommodations.

133. Plaintiff requested a reasonable accommodation, or alternatively, Defendant was aware of Plaintiff's need for a reasonable accommodation.

134. Defendant failed to engage in the interactive process with Plaintiff regarding any potential reasonable accommodations.

135. Defendant failed to provide Plaintiff with a reasonable accommodation at any time after his request for a reasonable accommodation or after Defendant was aware of Plaintiff's need for a reasonable accommodation.

136. There were reasonable accommodations available to Plaintiff that Defendant could have provided, including allowing reassigning Plaintiff to a vacant position; relocating Plaintiff's workspace to a location away from the noise associated with construction; and many others.

137. Plaintiff's employment was terminated because Defendant failed to provide him with a reasonable accommodation.

138. Defendant's acts and omissions violated Plaintiff's rights under the Colorado Anti-Discrimination Act.

139. Defendant acted with malice and with reckless disregard for Plaintiff's statutorily protected right to reasonable accommodations in the workplace.

140. As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

### Fifth Cause of Action
### (Colorado Anti-Discrimination Act—Disability Discrimination)

141. Plaintiff realleges all prior paragraphs and incorporates them herein.

142. Defendant knew that Plaintiff suffered from disabilities.

143. Defendant knew that Plaintiff's disabilities substantially limited him in one or more major activities or major bodily functions.

144. Defendant regarded Plaintiff as having a disability.

145. Defendant knew that Plaintiff had a record of a disability.

146. Defendant discriminated against Plaintiff because of his disabilities by engaging

15

in, tolerating, or failing to prevent the disability-based harassment alleged herein.

147. During Plaintiff's employment his supervisors and coworkers subjected him to offensive and unwelcome comments and treatment and other incidents of harassment because of his disability.

148. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and he perceived the conduct to be offensive and/or undesirable.

149. The conduct suffered by Plaintiff was sufficiently pervasive and/or severe to alter and did alter a condition of Plaintiff's employment and created an abusive working environment.

150. Plaintiff was detrimentally affected by the conduct and such conduct would have detrimentally affected a reasonable person in Plaintiff's position.

151. Defendant knew or should have known of the harassment described herein.

152. The harassment directed at Plaintiff was either intended to cause him severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress he has suffered relating to the conduct of Defendant.

153. Defendant terminated Plaintiff's employment because of Plaintiff's disability, because it regarded Plaintiff as having a disability, or because Plaintiff had a record of having a disability.

154. Defendant's acts and omissions violated Plaintiff's rights under the Colorado Anti-Discrimination Act.

155. Defendant acted with malice and with reckless disregard for Plaintiff's statutorily protected right not to be terminated because of his status as a qualified individual with a disability.

156. As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

### Sixth Cause of Action
### (Colorado Anti-Discrimination Act—Retaliation)

157. Plaintiff realleges all prior paragraphs and incorporates them herein.

158. Plaintiff engaged in protected activity when he opposed disability discrimination and challenged Defendant's failure to accommodate his disabilities.

159. Plaintiff was subjected to a materially adverse action when Defendant terminated his employment.

160. Defendant terminated Plaintiff's employment because of Plaintiff's protected activity.

161. Defendant's acts and omissions violated Plaintiff's rights under the Colorado Anti-Discrimination Act.

162. Defendant acted with malice and with reckless disregard for Plaintiff's statutorily protected right not to be terminated because of his protected activity.

163. As a result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

### Seventh Cause of Action
### (Age Discrimination in Employment Act—Age Discrimination)

164. Plaintiff realleges all prior paragraphs and incorporates them herein.

165. At all relevant times, Plaintiff was over forty years old.

166. Defendant discriminated against Plaintiff because of his age by engaging in, tolerating, or failing to prevent the disability-based harassment alleged herein.

167. During Plaintiff's employment his supervisors and coworkers subjected him to

offensive and unwelcome comments and treatment and other incidents of harassment because of his age.

168. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and he perceived the conduct to be offensive and/or undesirable.

169. The conduct suffered by Plaintiff was sufficiently pervasive and/or severe to alter and did alter a condition of Plaintiff's employment and created an abusive working environment.

170. Plaintiff was detrimentally affected by the conduct and such conduct would have detrimentally affected a reasonable person in Plaintiff's position.

171. Defendant knew or should have known of the harassment described herein.

172. Defendant terminated Plaintiff's employment because of Plaintiff's age.

173. Defendant's acts and omissions violated Plaintiff's rights under the Age Discrimination in Employment Act.

174. Defendant acted with willful disregard for Plaintiff's federally protected right not to be terminated because of his age.

### Eighth Cause of Action
### (Colorado Anti-Discrimination Act—Age Discrimination)

175. Plaintiff realleges all prior paragraphs and incorporates them herein.

176. At all relevant times, Plaintiff was over forty years old.

177. Defendant discriminated against Plaintiff because of his age by engaging in, tolerating, or failing to prevent the disability-based harassment alleged herein.

178. During Plaintiff's employment his supervisors and coworkers subjected him to offensive and unwelcome comments and treatment and other incidents of harassment because of his age.

179. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not

solicit or incite the conduct and he perceived the conduct to be offensive and/or undesirable.

180. The conduct suffered by Plaintiff was sufficiently pervasive and/or severe to alter and did alter a condition of Plaintiff's employment and created an abusive working environment.

181. Plaintiff was detrimentally affected by the conduct and such conduct would have detrimentally affected a reasonable person in Plaintiff's position.

182. Defendant knew or should have known of the harassment described herein.

183. Defendant terminated Plaintiff's employment because of Plaintiff's age.

184. Defendant's acts and omissions violated Plaintiff's rights under the Colorado Anti-Discrimination Act.

185. Defendant acted with willful disregard for Plaintiff's statutorily protected right not to be terminated because of his age.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. A declaration that Defendant discriminated against Plaintiff in violation of the American with Disabilities Act and/or the Age Discrimination in Employment Act;
2. Backpay in amount equal to lost compensation and benefits;
3. Damages for all other monetary losses sustained as a direct result of the violations;
4. Non-pecuniary and compensatory damages, including damages for humiliation, emotional distress, and consequential damages
5. Reinstatement or front pay in lieu thereof;
6. Liquidated damages;
7. Punitive damages;
8. Nominal damages;

9. Pre- and post- judgment interest at the highest statutory rate;

10. Costs and attorneys' fees pursuant to Fed. R. Civ. P. 54 and as allowed by statute; and

11. All other legal or equitable relief the court deems appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial for all issues triable by jury.

Respectfully submitted this 9th day of December, 2020.

                                      CORNISH & DELL'OLIO, P.C.

                                      s/Ian D. Kalmanowitz
                                      Ian D. Kalmanowitz, # 32379
                                      Cornish & Dell'Olio, P.C.
                                      431 N. Cascade Avenue, Ste. 1
                                      Colorado Springs, CO 80903
                                      TEL (719) 475-1204
                                      FAX (719) 475-1264
                                      ikalmanowitz@cornishanddellolio.com
                                      Attorney for Plaintiff

Plaintiff's address:
8270 Clifton Drive
Colorado Springs, CO 80920